# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

JOSHUA CARLSON, *on behalf of himself and all others similarly situated*,

                                        Plaintiff,

v.

BMW FINANCIAL SERVICES NA, LLC, and BMW OF NORTH AMERICA, LLC,

                                        Defendants.

Case No. 24-cv-3193 (LMP/TNL)

### ORDER GRANTING MOTION TO COMPEL ARBITRATION

Joshua Carlson, **The Carlson Firm, PA**, Edina, MN, for Plaintiff.

Emily B. Suhr, **Lewis Brisbois Bisgaard & Smith LLP**, Minneapolis, MN; and Eric Y. Kizirian & Alexandra K. Christensen, **Lewis Brisbois Bisgaard & Smith LLP**, Los Angeles, CA, for Defendants.

Non-negotiable form contracts with arbitration clauses have become standard in consumer contracts of all stripes. Insurance policies, credit card agreements, rental and lease agreements, the terms and conditions for any number of websites and software platforms—these days, each seem more likely than not to be a form contract containing an arbitration clause requiring the parties to those agreements to arbitrate their disputes rather than adjudicate them in court. Indeed, as the Eighth Circuit has recognized, "the bulk of contracts signed in this country are form contracts[,] a natural concomitant of our mass production-mass consumer society," and any rule invalidating such contracts or deeming them unenforceable as a matter of law would cause "much of commerce [to] screech to a

halt."  *Cicle v. Chase Bank USA*, 583 F.3d 549, 555 (8th Cir. 2009) (internal quotation

marks and citation omitted).

Such is the case here.  Plaintiff Joshua Carlson ("Carlson") filed suit alleging that

Defendants BMW Financial Services NA, LLC and BMW of North America, LLC

(collectively, "BMW") violated Minnesota law by engaging in a scheme to install

substandard tires that are designed to fail prematurely on new BMW vehicles, including a

vehicle Carlson leased.  *See generally* ECF No. 1-1.  BMW, citing an arbitration clause in

the agreement Carlson signed to lease his vehicle, moves to compel Carlson to arbitrate his

dispute.  ECF No. 6.  Because a valid and enforceable agreement to arbitrate exists between

BMW and Carlson, and because Carlson's claims fall within the scope of the agreement,

the Court grants BMW's motion and stays these proceedings pending arbitration.

## BACKGROUND

Carlson, an attorney licensed to practice in the state of Minnesota, leased a new

2022 BMW X3 (the "Leased Vehicle") from BMW of Minnetonka in July 2022.  ECF

No. 1-1 ("Complaint") ¶ 18; *see generally* ECF No. 7-3 ("Lease").  The Lease contains an

arbitration clause which includes a sub-header in all-capital letters and in red, boldface font

that reads, "PLEASE REVIEW – IMPORTANT – AFFECTS OUR LEGAL RIGHTS."

ECF No. 7-3 at 10.  The arbitration clause states:

> Either [BMW] or [Carlson] may choose to have any dispute between [them]
> decided by arbitration and not in a court or by jury trial.  If a dispute is
> arbitrated, [Carlson] will give up [his] right to participate as a class
> representative or class member on any Claim [Carlson] may have against
> [BMW] including any right to class arbitration or any consolidation of
> individual arbitrations.

*Id.* The arbitration clause goes on to define the term "Claim" and explains that either party

may unilaterally elect to have any "Claim" resolved through arbitration:

> "Claim" broadly means any claim, dispute or controversy, whether in contract, tort, statute or otherwise, whether preexisting, present or future, between [Carlson] and [BMW] . . . or between [Carlson] and any third parties if [Carlson] assert[s] a Claim against such third parties in connection with a Claim [Carlson] assert[s] against [BMW], which arises out of or relates to [Carlson's] credit application, the lease, purchase or condition of the Vehicle, this Lease, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease). Any Claim shall, at [BMW's] or [Carlson's] election, be resolved by neutral, binding arbitration and not by a court action.

*Id.* The arbitration clause also contains a class action waiver:

> Notwithstanding any other provision of this Lease or Arbitration Clause, if either [BMW] or [Carlson] elect[s] to arbitrate a Claim, neither [BMW] nor [Carlson] will have the right: (a) to participate in a class action, mass action, private attorney general action or other representative action in court or in arbitration, either as a class representative or class member; or (b) to join or consolidate Claims with claims of any other persons.

*Id.*

In this action, Carlson alleges that the tires appeared already to be "worn" when he

initially received the Leased Vehicle. ECF No. 1-1 ¶ 19. Carlson sought information from

BMW regarding the make, model, and type of tires that are installed at manufacture, but

he received "no satisfactory information" from BMW. *Id.* At some point, Carlson took the

Leased Vehicle to MotorWerks BMW ("MotorWerks"), a certified BMW dealership, for

routine maintenance and was told that the tires were "unsafe and needed immediate

replacement," even though Carlson was less than two years into the Lease and had only

driven the Leased Vehicle approximately 22,000 miles. *Id.* ¶ 20. After raising concerns

with MotorWerks and BMW regarding the "premature failure" of the tires, Carlson was

informed that BMW does not provide a warranty for the tires. *Id.* ¶¶ 21, 23. Carlson then contacted Pirelli, the tire manufacturer, who told Carlson that it manufactures tires for BMW vehicles to BMW's "requested specifications," which Carlson asserts are "specifically designed to have no tire tread warranty whatsoever." *Id.* ¶ 22. Carlson then contacted BMW again, who informed Carlson that tires could fail at any time and that, under the terms of the Lease, he was required to replace the Leased Vehicle's tires with ones that are "authorized and made to BMW specifications." ECF 1-1 ¶ 25; *see* ECF No. 7-3 at 7 ("[Carlson] agree[s] to maintain, service, repair, and recondition the Vehicle during the Lease Term with new and genuine BMW manufacturer's original equipment replacement parts . . . .").

Carlson filed a putative class action complaint in Minnesota state court, accusing BMW of violating Minnesota's Consumer Fraud Act, Minn. Stat. § 325F.69, and Minnesota's Deceptive Trade Practices Act, Minn. Stat. § 325D.44. ECF No. 1-1 ¶¶ 33–43. In lieu of answering, BMW removed the action to federal court and brought a motion to compel arbitration, citing the arbitration clause in the Lease. ECF Nos. 1, 6.

## ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, "establishes a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (internal quotation marks and citation omitted). Accordingly, there is a presumption that arbitration agreements "are generally reasonable as a matter of contract law." *Wold v. Dell Fin. Servs., L.P.*, 598 F. Supp. 2d 984, 988 (D. Minn. 2009) (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Because arbitration

is a matter of contract, "a court can only compel arbitration of claims that the parties have agreed to arbitrate." *Id.* (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)). Still, arbitration agreements may be found invalid and unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore, a court's role when considering a motion to compel arbitration is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022) (citation omitted).

State law governs whether a valid arbitration agreement exists, while federal law governs whether the parties' dispute falls within the scope of the agreement. *Anhui Powerguard Tech. Co., Ltd. v. DRE Health Corp.*, 95 F.4th 1146, 1149 (8th Cir. 2024). Where a valid arbitration agreement exists, a court "must liberally construe" its terms, "resolving any doubts in favor of arbitration." *Parm v. Bluestem Brands, Inc.*, 898 F.3d 869, 873–74 (8th Cir. 2018) (internal quotation marks and citation omitted). A court must grant a motion to compel arbitration based on a valid arbitration agreement unless the agreement "is not susceptible of an interpretation that covers the asserted dispute." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1199 (8th Cir. 2008) (internal quotation marks and citation omitted).

## I.    Legal Standard

A motion to compel arbitration is analyzed either as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), or as a motion for summary judgment under Rule 56, depending on whether "matters outside the pleadings" are presented and considered.

*City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881–82 (8th Cir. 2017).

Documents that are "necessarily embraced by the complaint" are considered part of the

pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir.

2004). Because the Lease is embraced by the complaint, *see* ECF No. 1-1 ¶¶ 18–20, the

Court analyzes BMW's motion to compel arbitration under Rule 12(b)(6). *See VonDeylen*

*v. Aptive Env't LLC*, No. 24-cv-2051 (DWF/DJF), 2024 WL 5040924, at *3 (D. Minn.

Dec. 9, 2024). Thus, the Court must accept Carlson's factual allegations as true and draw

all reasonable inferences in the light most favorable to Carlson. *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555–56 (2007).

## II.    Existence of a Valid and Enforceable Arbitration Agreement

BMW argues that Carlson's claims relate to the condition of the Leased Vehicle and

are within the scope of the arbitration clause. ECF No. 7 at 6. In response, Carlson asserts

that the arbitration clause is unconscionable, constituting a contract of adhesion that is

invalid and unenforceable. ECF No. 15 at 4. Carlson's arguments are unavailing.

### A.    Unconscionability

Under Minnesota law,[1] if a court determines that a contract clause is

unconscionable, the court may refuse to enforce the contract in its entirety, sever the

unconscionable clause, or limit the clause's application to avoid an unfair result.

---

[1] The Lease contains a choice of law provision which states that the Lease is "subject to
the federal law and substantive laws of the state where [Carlson] sign[ed] it," ECF No. 7-
3 at 10. Carlson signed the Lease in Minnesota, *see id.* at 5, 12, so the Court analyzes the
validity and enforceability of the Lease under Minnesota law.

*Maslowski v. Prospect Funding Partners LLC*, 994 N.W.2d 293, 302 n.6 (Minn. 2023) (citations omitted).  A contract is unconscionable if "no clear-thinking person would make it, or if no such person would accept it."  *Wold*, 598 F. Supp. 2d at 988 (citing *Kauffman Stewart, Inc. v. Weinbrenner Shoe Co.*, 589 N.W.2d 499, 502 (Minn. Ct. App. 1999)).  "Challenges to arbitration clauses on unconscionability grounds are routinely rejected by the courts."  *Yufan Zhang v. UnitedHealth Grp.*, 367 F. Supp. 3d 910, 916 (D. Minn. 2019) (citations omitted).  Nonetheless, the party asserting unconscionability must show that the contract is both procedurally and substantively unconscionable.  *Butler v. ATS Inc.*, No. 20-cv-1631 (PJS/LIB), 2021 WL 1382378, at *19 (D. Minn. Apr. 13, 2021) (citation omitted).  "Substantive unconscionability arises when the terms of the contract itself are unreasonably favorable to defendants, and procedural unconscionability arises if [the plaintiff] had no meaningful choice but to accept the contract."  *Id.* (internal quotation marks and citation omitted).

### 1.    Substantive Unconscionability

Carlson argues that the arbitration clause is substantively unconscionable because it "imposes an obligation on the Plaintiff to arbitrate tire disputes," even though BMW's warranty policies "absolve[] BMW of any responsibility for tires."  ECF No. 15 at 6.  But Carlson misreads the language of the arbitration clause.  The clause does not *require* the parties to arbitrate tire disputes or any other type of dispute; rather, it provides that either party *may elect* to arbitrate disputes within the clause's scope, no matter who initiates the dispute.  *See* ECF No. 7-3 at 10.  Even if the arbitration clause favors BMW, as Carlson argues, the fact that either party may unilaterally elect to have a dispute between them

arbitrated rather than litigated in court suggests that it does not unreasonably favor BMW. Further, whether BMW's warranty policies cover tires goes to BMW's potential liability, not whether the dispute itself is covered by the arbitration clause, and thus is beyond the scope of the Court's narrow inquiry here.  *See Triplet*, 42 F.4th at 870.

Carlson also argues that the arbitration clause "disproportionately favors BMW by limiting [Carlson's] rights to pursue class action relief and discovery."  ECF No. 15 at 4. But courts have rejected similar claims, and Carlson cites no contrary authority.  *See, e.g.*, *Lewis*, 584 U.S. at 506 (holding that the FAA "requires courts" to "enforce arbitration agreements according to their terms," even when the agreements require individual arbitration instead of class or collective proceedings); *Mainville v. Coll. Town Pizza, Inc.*, 629 F. Supp. 3d 913, 922 (D. Minn. 2022) (noting the lack of any authority invalidating an arbitration clause "on the grounds that arbitration limits discovery").  Indeed, courts have held that "whether an arbitration agreement is unconscionable due to limited discovery is a question for the arbitrator."  *Yufan Zhang*, 367 F. Supp. 3d at 917–18 (citations omitted); *see also Siebert v. Amateur Athletic Union of U.S., Inc.*, 422 F. Supp. 2d 1033, 1043–44 (D. Minn. 2006) (holding that "it is proper to allow the arbitrator to decide in the first instance the validity of" a provision in an arbitration agreement that "limit[ed] discovery").

Ultimately, without any authority showing that arbitration clauses like the one here have been found substantively unconscionable, Carlson is left with generalized and conclusory allegations of unequal bargaining power.  That is not enough to satisfy Carlson's burden.  *Johnson v. Hubbard Broad.*, 940 F. Supp. 1447, 1456 (D. Minn. 1996) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991)) ("[T]he mere allegation

that an arbitration agreement resulted from an inequality of bargaining power simply will

not suffice to invalidate the agreement."). Thus, the Court cannot conclude that the Lease's

arbitration clause is substantively unconscionable.

### 2.    Procedural Unconscionability

Carlson further contends that the arbitration clause is procedurally unconscionable

because of what he characterizes as a "procedural trap for the consumer" by which BMW

purportedly requires arbitration for all disputes but disclaims any liability relating to

disputes involving tires. ECF No. 15 at 5. This "procedural trap," according to Carlson,

leaves BMW customers experiencing tire issues "without any practical ability to resolve

tire-related disputes." *Id.*

Carlson's argument misses the mark for at least two reasons. First, the analysis of

procedural unconscionability does not involve an examination of the procedure by which

Carlson may raise a dispute or even his ability to pursue certain types of claims. Instead,

the analysis requires an assessment of the parties' relative bargaining power and whether

Carlson "had no meaningful choice but to accept" the terms of the Lease, including the

arbitration clause. *See Butler*, 2021 WL 1382378, at *19. It may be true, as Carlson asserts,

that the Lease's terms were non-negotiable and that BMW had greater bargaining power

than Carlson. *See* ECF No. 15 at 4. But such contracts are not necessarily unconscionable.

*See Cicle*, 583 F.3d at 555 ("These sorts of take-it-or-leave-it agreements between

businesses and consumers are used all the time in today's business world. If they were all

deemed to be unconscionable and unenforceable contracts of adhesion . . . much of

commerce would screech to a halt."). Furthermore, the "take-it-or-leave-it" nature of the

9

Lease underscores a critical point: "leave it" was always a choice available to Carlson.  In other words, Carlson could have chosen not to sign the Lease if he was concerned about the scope of the arbitration clause and did not want to be bound by it.

Second, Carlson is not left without recourse: he may proceed with his claims in arbitration.  *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; [he] only submits to their resolution in an arbitral, rather than a judicial, forum.").  Indeed, at oral argument, Carlson stated that he could resolve his claims in individual arbitration.  Regardless of whether Carlson believes that individual arbitration is an insufficient method to vindicate his claims, it is the method of dispute resolution he agreed to use for these types of claims when he signed the Lease and agreed to be bound by its terms, which include the arbitration clause and class action waiver.

For these reasons, the Court finds that the arbitration clause is neither substantively nor procedurally unconscionable.

## B.    Contract of Adhesion

Like contracts that are procedurally unconscionable, contracts of adhesion are those that are typically "drafted unilaterally by a business enterprise and forced upon an unwilling or unknowing public for services that cannot readily be obtained elsewhere." *Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 924 (Minn. 1982).  To show a contract of adhesion, a party must demonstrate (1) a great disparity in bargaining power with no opportunity for negotiation and (2) that the services offered by defendants are a public

necessity that cannot be obtained elsewhere. *Id.* at 924–25 (citations omitted). In determining whether an arbitration agreement constitutes an invalid contract of adhesion, Minnesota courts examine "the sophistication of the parties, the circumstances surrounding the execution of the agreement, and the burden arbitration places on the complaining party." *Ottman v. Fadden*, 575 N.W.2d 593, 597 (Minn. Ct. App. 1998) (citation omitted).

Carlson's argument here fails for largely the same reasons at play in the unconscionability analysis, but the Court will consider the additional factors articulated under Minnesota law. First, even assuming that a substantial disparity in bargaining power existed between the parties when Carlson signed the Lease, and that BMW would have rejected any attempt to negotiate the terms or inclusion of the arbitration clause, Carlson cannot credibly assert that BMW's leasing of vehicles is a service of public necessity that Carlson could not obtain from businesses other than BMW. *See Schlobohm*, 326 N.W.2d at 924. Second, as a licensed attorney, Carlson cannot reasonably assert that he lacked the sophistication necessary to understand the implications of the arbitration clause. Third, at oral argument, Carlson noted that he signed the Lease within minutes of receiving it, seemingly to suggest that he had insufficient time to review its terms. *See* ECF No. 7-3 at 13. But Carlson does not contend that he was required to sign the Lease so quickly or that he could not have taken more time to consider the implications of the arbitration clause's scope; simply put, it was his choice to spend little time reviewing the Lease. *See Siebert*, 422 F. Supp. 2d at 1039 (quoting *Malecha v. St. Croix Valley Skydiving Club*, 392 N.W.2d 727, 731 (Minn. Ct. App. 1986)) ("Absent fraud or misrepresentation, 'a person who signs a contract may not avoid it on the ground that he did not read it or thought its

terms to be different.'"). Finally, Carlson's arguments about the burden arbitration would place on him, including that discovery may be limited in arbitration, are conclusory and unsupported.

At bottom, Carlson has not shown that the arbitration clause is unconscionable or that it constitutes an unenforceable contract of adhesion. Therefore, the Court finds that the arbitration clause is valid and enforceable. The first step of the Court's limited analysis is complete.

## III. Scope of the Arbitration Agreement

Having established the validity and enforceability of the Lease's arbitration clause, the analysis turns to whether Carlson's claims are within the clause's scope. *See Triplet*, 42 F.4th at 870. When an arbitration clause is broad in scope, as the parties agree the arbitration clause here is, ECF No. 7 at 6; ECF No. 15 at 1, "the liberal federal policy favoring arbitration agreements requires that a district court send a claim to arbitration . . . as long as the underlying factual allegations simply touch matters covered by the arbitration provision," *Parm*, 898 F.3d at 874 (internal quotation marks and citations omitted); *see also Fleet Tire Serv. of N. Little Rock v. Oliver Rubber Co.*, 118 F.3d 619, 621 (8th Cir. 1997) ("Such a provision constitutes the broadest language the parties could reasonably use to subject their disputes to that form of settlement, including collateral disputes that relate to the agreement containing the clause.").

Carlson argues that his Minnesota consumer fraud claims fall outside the scope of the arbitration clause because those claims are statutory causes of action which "should not be subject to arbitration under a contract dispute clause." ECF No. 15 at 7. But the

12

arbitration clause provides that either party may elect to have any "Claim" decided by arbitration. ECF No. 7-3 at 10. And "Claim" is defined as "any claim, dispute, or controversy, whether in contract, tort, *statute* or otherwise . . . which arises out of or relates to [Carlson's] credit application, the lease, purchase or *condition of the Vehicle*, this Lease, or any resulting transaction or relationship . . . ." *Id.* (emphasis added). Thus, Carlson agreed to arbitrate statutory claims against BMW upon BMW's election so long as the claims "arise[] out of or relate[] to" the condition of the Leased Vehicle. There can be no debate that the factual allegations in Carlson's complaint regarding the quality of the Leased Vehicle's tires "touch matters covered by the arbitration provision." *Parm*, 898 F.3d at 874. Carlson's attempt to cast his claims that BMW committed consumer fraud and engaged in deceptive trade practices as somehow distinct from the factual basis underlying those claims—that is, the alleged substandard quality of the Leased Vehicle's tires—is unconvincing. The scope of the arbitration clause is broad enough to cover Carlson's allegations.

As to Carlson's assertion that arbitration is not an appropriate forum for his Minnesota statutory claims because the statutes in question serve a public policy or consumer safety purpose, the Court is not persuaded. Such claims "arising under a statute designed to further important social policies" may be resolved in arbitration "so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89–90 (2000) (quoting *Gilmer*, 500 U.S. at 28) (alteration in original; internal quotation marks omitted). And Carlson cites no authority precluding arbitration of claims under the statutes at issue

here.  *See Mitsubishi*, 473 U.S. at 628 ("Having made the bargain to arbitrate, the party

should be held to it unless Congress itself has evinced an intention to preclude a waiver of

judicial remedies for the statutory rights at issue."); *see also MegaForce v. Eng*, No. 18-

cv-1691 (ECT/HB), 2019 WL 413557, at *4 (D. Minn. Feb. 1, 2019) (granting a motion to

compel arbitration involving a claim brought under Minnesota's Deceptive Trade Practices

Act).

Finally, it does not matter that Carlson did not allege breach of contract in an effort

to "avoid triggering the arbitration clause," as he admits.  ECF No. 15 at 8; *see Info. Sys.*

*Audit & Control Ass'n, Inc. v. TeleComm. Sys., Inc.*, No. 17-cv-2066, 2017 WL 2720433,

at *4–5 (N.D. Ill. June 23, 2017) (holding that a plaintiff could not avoid an arbitration

clause by pleading equitable claims that were ostensibly exempted from an arbitration

clause's scope because it "would permit a party to obtain from a court essentially the same

relief as that otherwise reserved for the arbitrator").  The Lease's arbitration clause is not

limited to breach-of-contract claims, and the factual allegations underlying Carlson's

statutory claims bring them squarely within the arbitration clause's scope.  There simply is

no reading of the clause that could yield a different result.  *See 3M Co.*, 542 F.3d at 1199.

Accordingly, the Court finds that Carlson must pursue his claims against BMW in

arbitration in accordance with the arbitration clause's terms.

## IV.    Stay or Dismissal

The FAA instructs that if a court grants a motion to compel arbitration, the court

"shall make an order directing the parties to proceed to arbitration in accordance with the

terms of the agreement."  9 U.S.C. § 4.  However, the question of whether to dismiss or

14

stay this case during the pendency of arbitration remains. A recent Supreme Court decision offers guidance, holding that courts must stay a lawsuit if a party so requests. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). But *Spizzirri* leaves unresolved whether a court may dismiss a case where a party either requests dismissal or does not expressly request either a stay or dismissal.

BMW did not specifically indicate in its motion whether it requests a stay or dismissal of this proceeding in the event the Court grants its motion. At oral argument, counsel for BMW stated that either option would be acceptable. Considering *Spizzirri*, the Court believes the prudent course is to stay these proceedings pending resolution of this dispute in arbitration.

## ORDER

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.   BMW's Motion to Compel Arbitration (ECF No. 6) is **GRANTED**;

2.   Carlson is directed to proceed to arbitration with BMW in accordance with the terms of the Lease;

3.   This case shall be stayed pending resolution of this dispute in arbitration;

4.   The parties shall jointly notify the Court of the status of the arbitration within ninety days of the entry of this Order, and every ninety days thereafter while the arbitration remains pending;

5.      Upon resolution of the arbitration, the parties shall promptly and jointly file

a letter informing the Court whether any further action in this Court is necessary, including

enforcement of any arbitral award or dismissal of this case; and

6.      If Carlson decides not to proceed to arbitration with BMW, Carlson shall file

a letter notifying the Court of such decision, and the parties shall promptly file a joint

stipulation of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii).


Dated: January 13, 2025                        *s/Laura M. Provinzino*
                                        Laura M. Provinzino
                                        United States District Judge